1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11                        ----oo0oo----

12

13  C.T., a minor, by and through
    her parent, D.T.,
14                                    NO. CIV. S-06-197 FCD JFM
            Plaintiff,
15
       v.                            MEMORANDUM AND ORDER
16
    VACAVILLE UNIFIED SCHOOL
17  DISTRICT, LYNDA DONAHUE in
    her official and individual
18  capacity, and the CALIFORNIA
    DEPARTMENT OF EDUCATION,
19
            Defendants.
20
                          ----oo0oo----
21

22      This matter comes before the court on defendants Vacaville

23  Unified School District, Lynda Donahue, and the California

24  Department of Education's motion to dismiss plaintiff C.T.'s

25  ("plaintiff") first amended complaint ("FAC") pursuant to Federal

26  Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  Defendants

27  Vacaville Unified School District ("VUSD") and Lynda Donahue

28  _____

          [1]    All references to a "Rule" are to the Federal Rules of
    Civil Procedure.

("Donahue") (collectively, "defendants") move to dismiss plaintiff's FAC, specifically as to claims for relief I, II, III, IV, V, and VI, for lack of subject matter jurisdiction ("jurisdiction") and for failure to exhaust administrative remedies available under section 1415 of the Individuals with Disabilities Education Act ("IDEA").[2]  Further, defendants argue that plaintiff's sixth claim for relief should be dismissed because defendant Donahue is immune from liability in both her official and individual capacities.  Similarly, defendant California Department of Education ("CDE") moves to dismiss plaintiff's seventh claim for relief, claiming the court lacks jurisdiction because defendant CDE is protected by Eleventh Amendment immunity.  For the reasons set forth, defendants' motion to dismiss plaintiff's FAC is GRANTED in part and DENIED in part.[3]

**BACKGROUND**

**A.    Statutory Background - IDEA**

The IDEA (or "the Act") requires state education agencies, which receive federal funds for providing education to children with special needs, to comply with the provisions of the Act in administering a free and appropriate public education ("FAPE") to all children with disabilities through individualized education programs ("IEPs").  20 U.S.C. § 1415(a) (2006).  An IEP is a

---

[2]    On December 3, 2004, the IDEA was re-authorized by the IDEIA, the Individuals with Disabilities Education Improvement Act of 2004.  The court will herein refer to 20 U.S.C. § 1400 et seq. as the IDEA.

[3]    Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

"written statement for each child with a disability that is developed, reviewed, and revised in accordance with . . . [20 U.S.C. § 1414(d)]" of the IDEA, and is designed to meet each child's unique needs.  20 U.S.C. § 1401(14).

Specifically, these federally-funded agencies must "establish and maintain procedures in accordance with [§ 1415] . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] . . . by such agencies."  20 U.S.C. § 1415(a).  A child eligible for a FAPE and his or her parent(s) are afforded two procedural avenues to guarantee relief for an agency's failure to provide a FAPE - an opportunity to present a complaint to the state agency through a complaint procedure and, subsequently, an opportunity to participate in a due process hearing.  20 U.S.C. §§ 1415(b)(6), (f).  Where a complaint is filed against a local educational agency but remains unresolved "to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur . . . ."  20 U.S.C. § 1415(f)(B)(ii).  However, parties to a complaint may also enter a written settlement agreement, pursuant to a mediation process, which is "enforceable in any State court of competent jurisdiction or in a district court of the United States."  20 U.S.C. § 1415(e)(2)(F)(iii).

In compliance with the IDEA, the California Education Code includes procedural safeguards to guarantee that "all individuals with exceptional needs are provided their rights to appropriate programs and services which are designed to meet their unique needs under the [IDEA] . . . ."  Cal. Ed. Code § 56000 (2006).

Parties may issue complaints pursuant to the Uniform Complaint Procedure, and they may request a fair and impartial state-level due process hearing from the California Department of Education's Office of Administrative Hearings ("OAH")[4] to address unresolved complaints.  Cal. Ed. Code §§ 56501(a), 56501(b)(4), 56505(a); 5 CCR § 4600 et seq. (2006); (Pl.'s Opp'n, filed July 3, 2006, at 14:n.6).

**B.  Factual Background**

Plaintiff is a student in the Vacaville Unified School District.  (Pl.'s FAC, filed May 8, 2006, ¶¶ 7-16).  In or about January 1997, a physician diagnosed plaintiff with attention deficit/hyperactivity disorder.  (Id. at ¶ 8).  After plaintiff requested VUSD to perform a special education eligibility assessment based upon her diagnosis, a school psychologist conducted the assessment.  (Id. at ¶¶ 10-11).  Plaintiff then received her first IEP on or about February 4, 1998, based upon the assessment's results.  (Id. at ¶ 11).  The IEP declared plaintiff "eligible for special education services under the category of Specific Learning Disability" and, accordingly, itemized the specific programs and services VUSD would provide to plaintiff.  (Id. at ¶ 12).

/////

---

[4]   Plaintiff states that the hearing officer from OAH, later cited as the Office of Administrative Hearings, determined that OAH lacked jurisdiction over whether defendant VUSD breached the Agreement.  (Pl.'s FAC at ¶ 47).  Defendants VUSD and Donahue refer to the office which issued the same determination as the California Special Education Hearing Office ("SEHO").  (Dfs.' Mot. at 10:18, 12:5-8).  However, plaintiff notes that "SEHO was the predecessor to OAH as the administrative body responsible for hearing due process administrative proceedings."  (Pl.'s Opp'n at 14:n.6).  As such, the court refers to the office as OAH.

1    From the fall of 1999 until on or about March 2000,
2  plaintiff received vision and central auditory processing
3  evaluations.  (<u>Id.</u> at ¶¶ 15-16).  She also received an
4  occupational therapy evaluation.  (<u>Id.</u> at ¶ 15).  On or about
5  June 26, 2000, plaintiff enrolled at New Vistas Christian School
6  in Martinez, California, which implemented specialized teaching
7  methods.  (<u>Id.</u> at ¶ 17).  Subsequently, while plaintiff was still
8  enrolled at New Vistas Christian School, VUSD offered plaintiff a
9  FAPE, which consisted of placement in a special day classroom and
10  nine hours of private vision therapy.  (<u>Id.</u> at ¶¶ 17-18).

11    Plaintiff returned to schooling in VUSD in April 2002.  (<u>Id.</u>
12  at ¶ 26).  However, she alleges that "VUSD consistently failed to
13  respond" to her inquiries regarding special education
14  assessments, special education services, and IEP meetings.  (<u>Id.</u>)
15  Subsequently, plaintiff filed a compliance complaint on or about
16  September 9, 2003, with the California Department of Education's
17  Procedural Safeguards Referral Service, Special Education
18  Division.  (<u>Id.</u> at ¶ 27).  Plaintiff additionally requested a due
19  process hearing in or about April 2004, after failing to receive
20  a response to her complaint from the CDE on the ground that VUSD
21  failed to offer plaintiff a FAPE.  (<u>Id.</u> at ¶ 30).  That same
22  month, the CDE responded to plaintiff's complaint.  (<u>Id.</u> at ¶
23  29).

24    In response to plaintiff's due process hearing request,
25  plaintiff and VUSD entered a Compromise and Release Agreement
26  (the "Agreement") on or about May 19, 2004, specifying that both
27  parties agreed to:
28  /////

5

1     . . . resolve any and all disputes, causes of action,
      and claims concerning Student's education arising or
2     occurring up to the date of this Agreement and through
      the 2004-05 regular school year including, but not
3     limited to, Student's special education and related
      services, reimbursement (including attorneys' fees) and
4     compensatory education.

5    (Id. at ¶ 31).  The Agreement included "provisions relating to

6    . . . summer 2004 programming, 2004-2005 school year programs and

7    services, and a future IEP meeting."  (Id. at ¶ 32).  Plaintiff

8    alleges that VUSD violated the Agreement during summer 2004, when

9    it failed to provide certain educational services to plaintiff.

10   (Id. at ¶ 33).  She then filed new compliance complaints with the

11   CDE, one of which was based upon VUSD's alleged breach of the

12   Agreement.  (Id. at ¶¶ 35-36).  After responding to plaintiff's

13   compliance complaint regarding the Agreement, the CDE issued a

14   compliance report acknowledging VUSD's noncompliance with

15   sections of the Code of Federal Regulations and the California

16   Education Code.  (Id. at ¶¶ 37, 40-41).  Accordingly, the CDE

17   required VUSD to take the necessary corrective actions.  (Id. at

18   ¶ 41).

19        Additionally, on or about April 27, 2005, plaintiff filed a

20   compliance complaint with the CDE based upon VUSD's violation of

21   the Agreement, in failing to convene an IEP meeting by May 1,

22   2005.  (Id. at ¶ 42).  On or about June 8, 2005, she also

23   requested a due process hearing to address VUSD's alleged denial

24   of a FAPE to plaintiff.  (Id. at ¶ 44).  One day later, the CDE

25   again found that VUSD had not complied with the Agreement by

26   failing to convene an IEP meeting by May 1, 2005.  (Id. at ¶ 43).

27   CDE then ordered VUSD to take corrective actions.  (Id.)

28   /////

                                   6

Subsequent to plaintiff's June 8, 2005 request for a due process hearing, plaintiff submitted three issues for consideration at the hearing:

1. Did the district offer the student a FAPE for the 2005-2006 academic school year, including extended school year (ESY) services?

2. Did the district provide the student with a FAPE for the ESY in 2004, the regular school term for 2004-05, and/or the ESY 2005?

3. Did the district provide the student with a FAPE for school years 2001-02 through 2003-04, including the ESY for each year?

(<u>Id.</u> at ¶ 45).  VUSD filed a motion to dismiss the second and third issues.  (<u>Id.</u> at ¶ 46).  On or about November 1, 2005, the administrative law judge ("the hearing judge") dismissed the second and third issues to the extent they related to VUSD's provision of a FAPE in years prior to, and including, the 2004-2005 school year, since "the settlement agreement resolved all issues 'through the 2004-2005 regular school year.'" (<u>Id.</u> at ¶ 47).  Additionally, the hearing judge ruled that "OAH does not have the jurisdiction to determine whether the district [VUSD] breached the settlement agreement." (<u>Id.</u>)  In so holding, the hearing judge acknowledged that plaintiff's "remedies for alleged breach lie elsewhere." (<u>Id.</u>)  Consequently, plaintiff dismissed her due process hearing request in or about December 2005.  (<u>Id.</u>)

**STANDARD**

**A.   Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise, by motion, a defense that the court lacks "jurisdiction over the subject matter" of a claim.  Fed. R. Civ. P. 12(b)(1).  As "the federal courts are courts of limited jurisdiction," the

party seeking to invoke the court's jurisdiction bears the burden of establishing its existence.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994)(citations omitted); <u>Stock West, Inc. v. Confederated Tribes</u>, 873 F.2d 1221, 1225 (9th Cir. 1989).

On a motion to dismiss pursuant to Rule 12(b)(1), the standards the court is to apply vary according to the nature of the jurisdictional challenge.  A motion to dismiss for lack of jurisdiction may attack the allegations in the complaint used to establish jurisdiction as insufficient on their face ("facial attack"), or a motion may, as a "speaking motion," attack the existence of subject matter jurisdiction in fact ("factual attack").  <u>Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979); <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).

If the motion constitutes a facial attack, the court must consider the factual allegations of the complaint to be true. <u>Mortensen</u>, 549 F.2d at 891.  In fact, the federal claim must be "'immaterial and made only for the purpose of obtaining federal jurisdiction'" or "'wholly insubstantial and frivolous'" for the court to dismiss the claim on a Rule 12(b)(1) motion.  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83 (1998)(internal citations omitted).  If the motion constitutes a factual attack, however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  <u>Thornhill</u>, 594 F.2d at 733 (quoting <u>Mortensen</u>, 549 F.2d at 891).

1    In fact, "[w]here a jurisdictional issue is separable from

2  the merits of a case," the court "may consider the evidence

3  presented with respect to the jurisdictional issue and rule on

4  that issue, resolving factual disputes if necessary." Thornhill,

5  594 F.2d at 733.  Nevertheless, if the "jurisdictional issue and

6  substantive issues are so intertwined that the question of

7  jurisdiction is dependent on the resolution of factual issues

8  going to the merits, the jurisdictional determination should

9  await a determination of the relevant facts on either a motion

10 going to the merits or at trial." Augustine v. United States,

11 704 F.2d 1074, 1077 (9th Cir. 1983).

12 **B.   Rule 12(b)(6)**

13   On a motion to dismiss under Rule 12(b)(6), the court must

14 accept the allegations of the complaint as true.  Cruz v. Beto,

15 405 U.S. 319, 322 (1972).  The court is bound to give the

16 plaintiff the benefit of every reasonable inference to be drawn

17 from the "well-pleaded" allegations of the complaint.  Retail

18 Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).

19 As such, the plaintiff need not necessarily plead a particular

20 fact if that fact is a reasonable inference from facts properly

21 alleged.  Id.  As the complaint is construed favorably to the

22 pleader, the court may not dismiss the complaint for failure to

23 state a claim upon which relief can be granted unless it appears

24 beyond a doubt that the plaintiff can prove no set of facts in

25 support of the claim which would entitle him or her to relief.

26 Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Industries, Inc. v.

27 Kaplan, 792 F.2d 896, 898 (9th Cir. 1986)(citation omitted).

28 /////

9

1  Nevertheless, the court may not assume that the plaintiff

2  "can prove facts which it has not alleged or that the defendants

3  have violated the . . . laws in ways that have not been alleged."

4  Associated Gen. Contractors of Calif., Inc. v. Calif. State

5  Council of Carpenters, 459 U.S. 519, 526 (1983).  Moreover, the

6  court "need not assume the truth of legal conclusions cast in the

7  form of factual allegations."  United States ex rel. Chunie v.

8  Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

9  **ANALYSIS**

10  **A.   Federal Question[5]**

11  In her first claim for relief, plaintiff seeks a judicial

12  declaration of her and defendant VUSD's rights and obligations

13  with respect to the Agreement.  She also requests an appeal of

14  her claims, in accordance with her June 8, 2005 due process

15  hearing request.  Defendants first argue that plaintiff brings

16  her claim under the Declaratory Judgment Act to establish

17  jurisdiction, an insufficient basis for such jurisdiction.  They

18  further contend that plaintiff's action is a "routine" breach of

19  contract case, such that it only may be heard properly in state

20  court.  As defendants present a "facial attack" to the existence

21  of jurisdiction, dismissing plaintiff's allegations as

22  insufficient to establish jurisdiction, the court must consider

23  the factual allegations of the complaint to be true.  Mortensen,

24  549 F.2d at 891.

25

26  [5]   Defendants argue that plaintiff fails to establish the
court's jurisdiction over all her claims for relief.  However,
27  defendant only argues that plaintiff's case does not arise from a
federal question for purposes of jurisdiction in regards to her
28  first claim for relief.

1    Jurisdiction exists where a federal question is involved or
2  where the requirements of diversity of citizenship are met.  26
3  C.J.S. Declaratory Judgments § 116 (2005).  The Ninth Circuit has
4  held that "[a]ny non-frivolous assertion of a federal claim
5  suffices to establish federal question jurisdiction, even if that
6  claim is later dismissed on the merits."  Cement Masons Health &
7  Welfare Trust Fund v. Stone, 197 F.3d 1003, 1008 (9th Cir.
8  1999)(citing Bell v. Hood, 327 U.S. 678, 682 (1946)).  While
9  defendants correctly point out that jurisdiction "does not exist
10  merely because a declaratory judgment is sought," plaintiff does
11  not attempt to invoke jurisdiction solely under the Declaratory
12  Judgment Act.  26 C.J.S. Declaratory Judgments § 116 (2005).

13    Plaintiff seeks to invoke jurisdiction over claim I under
14  sections 1415(i)(2)(A) and 1415(i)(3)(A) of the IDEA on the
15  ground that the Agreement for which she seeks a declaration of
16  her rights "arises under" federal law.[6]  She further asserts that
17  "settlement agreements written pursuant to the IDEA shall be
18  enforced in federal court," citing § 1415(e)(2)(F).  (Pl.'s
19  Opp'n, filed July 3, 2006, at 18:12-14).  Because all reasonable
20  inferences must be drawn in favor of plaintiff on this motion,
21  /////

22
23    [6]    A review of plaintiff's FAC reveals that her first
   claim for relief is brought pursuant to numerous federal
   statutes.  Specifically, plaintiff brings this claim in
24  accordance with the IDEA, 20 U.S.C. §§ 1415(i)(2)(A), 1415
   (i)(3)(A), 28 U.S.C. § 1331, 28 U.S.C. § 2201, section 504 of the
25  Rehabilitation Act of 1973, 29 U.S.C. § 701, Title II of the
   Americans With Disabilities Act, 42 U.S.C. § 12131, and the
26  Agreement between plaintiff and defendant VUSD.  As plaintiff
   seeks a declaration of her rights related to the Agreement - made
27  pursuant to the IDEA - and since both parties address whether
   jurisdiction is established under the IDEA, the court limits its
28  analysis to the IDEA as plaintiff's basis for jurisdiction.

1    the court infers that the Agreement between plaintiff and

2    defendant VUSD was made pursuant to § 1415(e)(2)(F).

3        Defendants argue that the Agreement between plaintiff and

4    defendant VUSD is a contract that must properly be enforced in

5    state court. (Dfs.' Mot., filed June 7, 2006, at 9:6-11).  The

6    court finds defendants' argument unpersuasive.  Defendants rely

7    upon three Ninth Circuit opinions in which the court held that

8    the plaintiffs' claims in those cases did not "arise under"

9    federal law sufficient to invoke jurisdiction.  (Id. at 9:17-28).

10   However, none of the cases involve the IDEA or agreements reached

11   pursuant to provisions of the IDEA.  Therefore, defendants'

12   citations are not applicable to this case.

13       Plaintiff argues that the Agreement between herself and

14   defendant VUSD "sets forth the manner in which VUSD must provide

15   services in order to comply with the IDEA," such that the

16   Agreement "clearly turns on the federal law" to establish the

17   court's jurisdiction over plaintiff's first claim for relief.

18   (Pl.'s Opp'n at 12:1-4).  More specifically, as previously noted,

19   the Agreement was allegedly made under § 1415(e)(2)(F), which

20   allows parties to execute a legally binding agreement stating the

21   resolution they have reached to resolve a complaint.  Congress

22   provided an express right of action to enforce such an agreement

23   in federal court.  20 U.S.C. § 1415(e)(2)(F)(iii).  In their

24   reply, defendants attempt to interpret the language of this

25   subsection as requiring mediation agreements under the IDEA to

26   explicitly specify that the mediation agreement can be enforced

27   in either state or federal court.  (Dfs.' Reply, filed on July

28   14, 2006, at 3:4-10).  The court finds no merit to this argument.

1    Section 1415(e)(2)(F) states that:

2    In the case that a resolution is reached to resolve the
     complaint through the mediation process, the parties
3    shall execute a legally binding agreement that *sets
     forth such resolution* and *that*
4    (i)   states that all discussions that occurred during
           the mediation process shall be confidential . . .;
5    (ii)  is signed by both the parent and a representative
           of the agency . . .; and
6    (iii) *is* enforceable in any State court of competent
           jurisdiction or in a district court of the United
7          States.

8    20 U.S.C. § 1415(e)(2)(F)(iii) (emphasis added).  Congress did

9    not state that the agreement "shall set forth such resolution and

10   that *it* is enforceable" in federal court.  Furthermore, in

11   § 1415(e)(2)(i), where Congress required the parties to include a

12   confidentiality clause in the agreement, it specified that the

13   agreement must "state" such a clause.  The language of

14   § 1415(e)(2)(iii) is not similarly explicit.  The plain language

15   of the statute reveals that Congress unequivocally intended

16   § 1415(e)(2)(F)(iii) to confer jurisdiction upon federal courts

17   and an express right of action to parties over claims arising

18   from agreements made pursuant to § 1415(e)(2).  Therefore,

19   plaintiff has established the court's jurisdiction under

20   § 1415(e)(2)(F)(iii).

21       Furthermore, plaintiff brings her first claim under

22   § 1415(i)(3)(A), which affords jurisdiction to the federal courts

23   over actions "brought under this section without regard to the

24   amount in controversy."  20 U.S.C. § 1415(i)(3)(A).  As

25   plaintiff's Agreement with defendant VUSD was executed under

26   section 1415 of the IDEA, Congress has expressly conferred

27   /////

28   /////

13

1  jurisdiction upon the court to hear plaintiff's claims arising

2  from the Agreement.[7]

3       Nevertheless, defendants contend that the Ninth Circuit's

4  decision in Wyner v. Manhattan Beach Unified School District

5  implicates the court's lack of jurisdiction to hear plaintiff's

6  claims here.  223 F.3d 1026 (9th Cir. 2000).  In Wyner, the

7  plaintiff requested a due process hearing in accordance with the

8  IDEA and reached a settlement agreement with the defendant school

9  district during the course of the hearing.  Wyner, 223 F.3d at

10  1027.  The hearing officer issued an order requiring both parties

11  to comply with the settlement agreement.  Id.  The plaintiff

12  subsequently initiated another due process proceeding to address

13  the school district's failure to comply with the settlement

14  agreement.  Id. at 1028.  At the second due process hearing, the

15  hearing officer determined that the order from the previous

16  hearing constituted a "final administrative determination of that

17  matter" such that a "subsequent due process hearing was not

18  available to address the School District's alleged noncompliance

19  with the settlement agreement and SEHO order in a prior due

20  process hearing."  Id. at 1030.  The Ninth Circuit agreed with

21

22         [7]    Plaintiff also contends, in her FAC, that the court
   has jurisdiction over claim I under section 1415(i)(2)(A) of the
23  IDEA.  Section 1415(i)(2)(A) provides that where a party is
   aggrieved by the findings and decision of a state-level due
24  process hearing or local-level due process hearing, in which case
   an appeal to the state level is unavailable, he or she may bring
25  suit in federal court.  20 U.S.C. § 1415(i)(2)(A).  While §
   1415(i)(2)(A) also establishes an express right of action in
26  federal court, plaintiff's first claim is based upon the alleged
   breach of the Agreement, not a decision made at a due process
27  hearing.  Nevertheless, plaintiff has already established the
   court's jurisdiction such that the court need not reach the
28  merits of this assertion.

the hearing officer's determination.  <u>Id.</u>  However, in <u>Wyner</u>, the

Ninth Circuit did not address the issue of whether the plaintiff

could appeal her claims related to the settlement agreement to

federal court where OAH lacked jurisdiction over those claims.

Because this is the issue currently before the court,[8]

defendants' reliance on <u>Wyner</u> is misplaced.

**B.    Failure to Exhaust Administrative Remedies**

       **1.    Exhaustion**

Defendants ask the court to dismiss plaintiff's claims for

relief I, II, III, IV, V, and VI on the ground that plaintiff

failed to exhaust the administrative remedies provided by the

IDEA.  The Ninth Circuit has recognized the need for a party to

exhaust his or her administrative remedies under the IDEA,

because exhaustion

> . . . allows for the exercise of discretion and
> educational expertise by state and local agencies,
> affords full exploration of technical educational
> issues, furthers development of a complete factual
> record, and promotes judicial efficiency by giving
> these agencies the first opportunity to correct
> shortcomings in their educational programs for disabled
> children.

----

[8]    Although unnecessary to a decision that plaintiff has
established jurisdiction over her first claim for relief, the
court finds that OAH held the Agreement in itself to constitute
"a final administrative determination" for purposes of the IDEA.
In <u>Wyner</u>, a hearing officer actually issued *an order* requiring
both parties to comply with the settlement agreement.
Accordingly, the decision constituted an unappealable "final
administrative determination."  Here, however, there is no
indication that after defendant VUSD and plaintiff initially
entered the Agreement, the hearing judge issued an *actual order*
requiring compliance.  Nevertheless, the hearing officer
determined that OAH lacked jurisdiction to address defendant
VUSD's alleged breach of the Agreement based upon the reasoning
of <u>Wyner</u>.  As such, the hearing judge treated the Agreement as a
final due process hearing order for purposes of the IDEA.

1  Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303

2  (9th Cir. 1992)(citation omitted).  In the context of the IDEA,

3  the exhaustion doctrine requires that, "before the filing of a

4  civil action under such laws seeking relief that is also

5  available under this part [20 U.S.C. § 1411 et seq.], the

6  procedures under subsections (f) [due process hearing] and (g)

7  [appeal] of this section shall be exhausted to the same extent as

8  would be required had the action been brought under this part

9  [20 U.S.C. § 1411 et seq.]."  20 U.S.C. § 1415(l).

10      A party need only exhaust the due process hearing system

11  before filing suit for violations of the IDEA or other laws

12  seeking relief available under the IDEA.  Porter v. Bd. of Trs.

13  of Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1071 (9th

14  Cir. 2002).  Under § 1415(f) parents "shall have an opportunity

15  for a due process hearing, which shall be conducted by the State

16  educational agency or by the local educational agency . . . ."

17  20 U.S.C. § 1415(f)(1)(A).  If a local educational agency

18  conducts the hearing, and parents are "aggrieved by the findings

19  and decision rendered," they may "appeal such findings and

20  decision to the State educational agency."  20 U.S.C. §

21  1415(g)(1).  However, pursuant to section 56505 of the California

22  Education Code, a state-level due process hearing "shall be the

23  final administrative determination and binding on all parties."

24  Cal. Ed. Code § 56505(h).

25      In addition to her first claim for relief, plaintiff brings

26  claims for relief II, III, IV, V, and VI under section 504 of the

27  Rehabilitation Act of 1973, Title II of the ADA, California

28  Education Code section 56000, the Unruh Civil Rights Act, and 42

16

U.S.C. § 1983, respectively.[9]  She maintains that, in accordance with § 1415(l), she has not only exhausted the due process hearing system pursuant to § 1415(f), but also the Uniform Complaint Procedure of the California Education Code, which satisfies § 1415(b)(6) by implementing a state-level complaint procedure.  However, defendants attempt to refute plaintiff's contention, arguing that a due process hearing was never held such that plaintiff has failed to exhaust her administrative remedies under the IDEA.  (Dfs.' Mot. at 15:11,28, 16:1-5).

Defendants contend that "the initiation of a state level review which did not proceed to a due process hearing is not literal exhaustion exhaustion [nor] . . . its equivalent." Tyler B. v. San Antonio Elem. Sch. Dist., 253 F. Supp. 2d 1111, 1118 (N.D. Cal. 2003).  In Tyler, the plaintiff suffered from a life-threatening illness.  Id. at 1113.  After the plaintiff's school district implemented an IEP for him, his parents complained to the school district's officials about their dissatisfaction with the IEP.  Id.  The plaintiff subsequently filed a complaint with the CDE.  Id.  After the CDE issued a compliance report, the defendants allegedly failed to comply, prompting the plaintiff's mother to request state intervention.  Id. at 1116.  While a due process hearing was initially scheduled, the parties began mediating their dispute.  Id.  In fact, the plaintiff's mother

_____

[9]     Plaintiff asserts that she is not required to exhaust her administrative remedies when bringing suit under 42 U.S.C. § 1983.  (Pl.'s FAC at ¶ 52).  However, defendants are correct in noting that plaintiff is "required to exhaust administrative remedies before instituting a claim under 42 U.S.C. § 1983 predicated on a violation of the IDEA," even if only seeking money damages under that statute.  Walden v. Moffett (E.D. Cal. Apr. 12, 2006) 2006 WL 947738 at *3.

1  received a letter from the Special Education Hearing Office
2  "indicating its understanding that the parties had agreed to take
3  the due process hearing off the calendar." Id. In subsequent
4  years, the plaintiff filed a complaint in Monterey County
5  Superior Court. Id. His mother and he also brought suit in
6  federal court, eventually dismissing the state action. Id. The
7  court found that the plaintiff had agreed to cancel his due
8  process hearing, such that he failed to exhaust the
9  administrative remedies available to him. Id. at 1118.

10        The facts of this case, however, are distinguishable from
11  the facts in Tyler B.. Here, plaintiff filed numerous complaints
12  with the CDE alleging defendant VUSD failed to comply with the
13  provisions of the Agreement, for which the CDE issued compliance
14  reports in response. On June 8, 2005, she requested a due
15  process hearing to address defendant VUSD's alleged breach of the
16  Agreement. However, on November 1, 2005, the hearing officer
17  determined that OAH lacked jurisdiction to determine whether the
18  Agreement was breached. Furthermore, the hearing judge granted
19  defendant VUSD's motion to dismiss two issues, to the extent they
20  were covered by the settlement agreement. Unlike the plaintiff
21  in Tyler B., plaintiff here did not voluntarily cancel her due
22  process hearing in light of mediation efforts between her and
23  defendant VUSD. Defendants argue that even though plaintiff
24  requested a hearing, she later "dismissed her OAH Request for Due
25  Process in or about December of 2005." (Dfs.' Mot. at 15:25-25).
26  This argument, though, ignores the major distinction between
27  plaintiff's decision to dismiss her due process request only
28  after the hearing judge refused to hear her claims regarding the

alleged breach of the Agreement, and the plaintiff's voluntary cancellation of his scheduled hearing in Tyler B..

Similarly, defendants' reliance upon the Ninth Circuit's decision in Robb v. Bethel School District #403 is unavailing. 308 F.3d 1047 (9th Cir. 2002).  In Robb, the plaintiffs - a student and her parents - alleged that the student's school district violated the IDEA by depriving the student of educational opportunities and causing "emotional stress, humiliation, embarrassment, and psychological injury."  Robb, 308 F.3d at 1048.  However, the plaintiffs failed to either initiate a state level review through the complaint procedure, *or request a due process hearing*, before filing suit in federal court under 42 U.S.C. § 1983.  Id. at 1048, 1052.  The court held that, since plaintiffs did not exhaust their administrative remedies available under the IDEA, and since their alleged injuries "could be redressed to some degree" by such remedies, the district court properly dismissed the plaintiffs' claim for lack of jurisdiction.  Id. at 1053-54.

The court does not dispute that the initiation of a state level review must culminate with a due process hearing to fully exhaust the administrative remedies available under the IDEA, *where a due process hearing is available to the requesting party.* Tyler B., 253 F. Supp. 2d at 1118.  However, here, the court finds that since the hearing judge denied plaintiff a due process hearing on the ground that OAH lacked jurisdiction over her

/////
/////
/////

claims, she carried her burden to the extent possible in the circumstances of this case.[10]

### 2. Excuse to Exhaustion

Nevertheless, to the extent that plaintiff failed to exhaust her administrative remedies through the absence of a due process hearing, she is excused from exhaustion under the doctrine's inadequate relief and futility exceptions. A party is freed from the exhaustion requirement set forth in § 1415(l) where her use of due process procedures would be futile, or where she would not obtain adequate relief by pursuing administrative remedies. Hoeft, 967 F.2d at 1303-04; see Honig v. Doe, 484 U.S. 305, 327 (1988).

Here, plaintiff contends that seeking a due process hearing would be futile, as she could not obtain relief regarding defendant VUSD's alleged breach of the Agreement because OAH lacked jurisdiction over her claims. Defendants challenge plaintiff's argument, maintaining that, in Hoeft, the Ninth Circuit found that the district court was "burdened . . . with a

---

[10]    Unlike plaintiff's claims for relief I, II, III, IV, and V, claim VI on its face does not appear related to the alleged breach of the Agreement. Plaintiff brings claim VI under 42 U.S.C. § 1983, alleging that defendant Donahue violated her constitutional and statutory rights by retaliating against plaintiff "for Plaintiff's assertion of her legal rights." (Pl.'s FAC at ¶¶ 99, 100, 104). Based upon the allegations of the complaint, it appears these actions were committed prior to execution of the Agreement. (Id. at ¶ 28). However, the Agreement resolves "any and all disputes, causes of action, and claims concerning [plaintiff's] education arising or occurring up to the date of this Agreement . . . ." (Id. at ¶ 31). The court, then, infers that defendant Donahue's actions were covered by the Agreement. Accordingly, when the hearing judge determined that OAH lacked jurisdiction to hear her claims regarding the alleged breach of the Agreement, plaintiff also exhausted her administrative remedies for Count VI to the extent possible.

dispute which first should have been addressed in an
administrative forum." <u>Hoeft</u>, 967 F.2d at 1308.  The court's
decision in <u>Hoeft</u> has no application in this case.  In <u>Hoeft</u>, the
plaintiffs failed to request a due process hearing pursuant to
the IDEA and filed suit in court before the state could fully
investigate their state-level complaints such that they could not
avail themselves of the exhaustion exception of inadequate
relief.  <u>Id.</u>  In this case, however, as detailed previously,
plaintiff did request a due process hearing to address defendant
VUSD's alleged failure to comply with the terms of the Agreement,
only cancelling her request after the hearing judge determined
that OAH lacked jurisdiction over her claims.

        The Ninth Circuit previously found that where a plaintiff
was denied a due process hearing under the IDEA, and where
further attempts at seeking a due process hearing will be futile,
he or she need not exhaust administrative remedies.  <u>Kerr Ctr.
Parents Ass'n v. Charles</u>, 897 F.2d 1463, 1470 (9th Cir. 1990).
In <u>Kerr</u>, the plaintiffs requested a due process hearing from the
defendant school district and the defendant state agency, after
the school district "already determined that it would not provide
the funds necessary for plaintiffs' free appropriate public
education."  <u>Id.</u>  The school district refused to provide a due
process hearing, and the state agency deferred responsibility to
the state legislature, which appropriated funds to the agency.
<u>Id.</u>  The court found that a hearing before the school district
and an appeal to the state education agency would have been
futile, "since the problem posed by the legislature's failure to
/////

21

appropriate sufficient funds is not one which could have been effectively addressed through the administrative process."   Id.

Similarly, prior to any hearing, the hearing judge in this case determined that OAH had no jurisdiction over plaintiff's claims related to the alleged breach of the Agreement. Additionally, plaintiff could not appeal the hearing judge's determination, since plaintiff had already requested a hearing before the state's OAH.   Therefore, the issue of whether defendant VUSD in fact failed to comply with the terms of the Agreement could not be resolved through the administrative process.   The hearing judge's decision to deny plaintiff a due process hearing on the ground of lack of jurisdiction renders the administrative process futile.   Plaintiff is thereby excused from the exhaustion requirement.[11]

/////

/////

/////

/////

/////

---

[11]   The inadequate relief and futility excuses to exhaustion "may in some circumstances overlap" but are distinct. 5 Jacob Stein, Glenn Mitchell & Basil Mezines, *Administrative Law* § 49.02 (1992).   However, in specifying the exceptions to the exhaustion requirement of the IDEA, Congress noted that where "the hearing officer lacks the authority to grant the relief sought," a party may avail him or herself of the inadequate relief excuse.   H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985).   Therefore, since the hearing judge did not have jurisdiction over plaintiff's claim, warranting a denial of a due process hearing, plaintiff is not required to exhaust administrative remedies under either excuse.   However, in so holding, the court limits overlap of these excuses to the specific facts of this case.

## C.   Qualified Immunity[12]

Defendants also move to dismiss plaintiff's sixth claim for relief on the ground that defendant Donahue is immune from liability under the doctrine of qualified immunity. (Dfs.' Mot. at 18:26-28).  The doctrine of qualified immunity protects from suit government officers who do not knowingly violate the law. Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994). Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (citation omitted).  The question of immunity generally is not one for the jury. Hunter v. Bryant, 502 U.S. 224, 228 (1991) (citation omitted).  Qualified immunity "should be decided by the court long before trial." Id.  Nevertheless, if a genuine issue of material fact exists regarding the circumstances under which the officer acted, then the court should make the determination after the facts have been developed at trial.  Act Up!\Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).

At the motion to dismiss stage, though, the court accepts the allegations of the complaint as true, such that the court must determine the existence of qualified immunity based upon the pleadings.  As such, the court refers to plaintiff's FAC in determining the existence of qualified immunity at this stage.

---

[12]   In her opposition, "[p]laintiff acknowledges that defendant Donahue cannot be sued in her official capacity in a claim under 42 U.S.C. § 1983."  (Pl.'s Opp'n at 22:14-17) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Accordingly, based upon plaintiff's non-opposition, the court GRANTS defendant Donahue's motion to dismiss plaintiff's claim VI to the extent that it is brought against her in her official capacity.

1    The Supreme Court defined a two-part test to determine
2  whether an officer is entitled to qualified immunity.  Saucier v.
3  Katz, 533 U.S. 194, 201-202 (2001).  The court must first ask
4  whether the plaintiff's complaint alleges that her constitutional
5  rights have been violated.  Id.  If no violation has occurred,
6  the officer may invoke the qualified immunity defense.  Id. at
7  201.  Where a constitutional right has been violated, though, the
8  court must then determine if those rights were clearly
9  established, in which case the officer is not immune to
10 liability.  Id. at 202.  Such rights are clearly established if
11 "it would be clear to a reasonable officer that . . . [her]
12 conduct was unlawful in the situation . . . [she] confronted."
13 Id.  However, if the officer's conduct stems from a reasonable
14 mistake as to what the law requires, she is still entitled to the
15 qualified immunity defense.  Id. at 205.

16    Applying the Saucier test to the case at hand, the court
17 finds that defendant Donahue cannot claim the qualified immunity
18 defense at this stage.  First, plaintiff's FAC sufficiently
19 alleges that her constitutional and statutory rights have been
20 violated.  Plaintiff alleges that, after plaintiff filed a
21 compliance complaint with CDE, defendant Donahue "acted in a
22 retaliatory manner against Plaintiff by refusing to convene any
23 IEP meetings for Plaintiff after she requested them."  (Pl.'s FAC
24 at ¶ 37).  It is a fundamental principle that the right to
25 petition government for redress of grievances is "among the most
26 precious of the liberties safeguarded by the Bill of Rights."
27 United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217,
28 222 (1967).  Moreover, "[d]eliberate retaliation by state actors

24

against an individual's exercise of this right is actionable under section 1983." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314, 1319 (9th Cir. 1989). Plaintiff's right to seek redress from the CDE for VUSD's alleged breach of the Agreement is clearly a constitutionally-protected freedom, such that defendant Donahue's alleged retaliatory action against plaintiff is a violation of plaintiff's First Amendment right. Similarly, plaintiff's FAC also alleges that defendant Donahue violated plaintiff's right under the California Education Code § 56043(j), pursuant to the IDEA, by failing to convene an IEP meeting as plaintiff requested. (Pl.'s FAC at ¶¶ 99-104).

Second, plaintiff's constitutional and statutory rights were clearly established. As mentioned, the court must determine whether a reasonable official would find defendant Donahue's alleged conduct unlawful in light of the circumstances. Saucier, 533 U.S. at 202. Furthermore, the court "need not find a prior case with identical, or even 'materially similar," facts" to find that the law is clearly established. Hope v. Pelzer, 536 U.S. 730, 738 (2002). Defendant Donahue argues that plaintiff does not show that a reasonable person would find defendant Donahue's alleged conduct unlawful. (Dfs.' Reply at 7:14-18). However, the Ninth Circuit has held that "where prior cases have delineated governing legal principles," or where an applicable statute or regulation exists, "the law is 'clearly established' for immunity purposes." Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1137 (9th Cir. 2003). Here, the law was clearly established that it was illegal to retaliate against plaintiff's constitutional right to seek redress. Morgan, 874

25

F.2d at 1314, 1319.  Additionally, the existence of the IDEA and
California Education Code § 56043(j) provided her with fair
warning that she was required to convene an IEP meeting in
accordance with the IDEA.  20 U.S.C. § 1414(d)(3); Cal. Ed. Code
§ 56043(j).  As such, a reasonable person would find defendant
Donahue's alleged conduct unlawful.  Therefore, at this stage,
the court cannot determine that defendant Donahue is entitled to
qualified immunity.

**D.    Claims Against Defendant CDE**

Plaintiff's seventh claim for relief alleges that defendant
CDE is in violation of section 1415(a) of the IDEA by "fail[ing]
to enforce the corrective actions that it required of VUSD in its
June 3, 2005 compliance report."  (Pl.'s FAC at ¶ 115).  That
section requires any state educational agency receiving federal
funding under section 1411 of the IDEA to "establish and maintain
procedures in accordance with [section 1415]" *to guarantee the
provision of a FAPE to children with disabilities*.  20 U.S.C. §
1415(a).  Defendant CDE moves to dismiss claim VII,[13] on the
grounds that it is immune from liability under the Eleventh

---

[13]    Defendant CDE requests the court to dismiss claim VII
for lack of jurisdiction, pursuant to Federal Rule of Civil
Procedure 12(b)(1), asserting that the "federal Constitution,
federal statutes, nor Federal Rules of Civil Procedure gives this
Court any jurisdiction" over its alleged violation of 20 U.S.C.
section 1415(a).  (Df. CDE's Mot. at 1:28, 5:17-19).  However,
defendant CDE later asserts that "the facts alleged in the FAC
fail to set forth a cognizable claim under the IDEIA" since
"Congress neither provided nor intended monetary damages to be
available under the IDEIA."  (Id. at 5:22).  As such, it appears
defendant CDE moves to dismiss plaintiff's claim VII for lack of
jurisdiction, and alternatively, for failure to state a claim
upon which relief can be granted, pursuant to Federal Rule of
Civil Procedure 12(b)(6).  The court addresses the motion
accordingly.

1  Amendment and that plaintiff fails to state a claim upon which

2  relief can be granted.  (Df. CDE's Mot., filed on June 12, 2006,

3  at 1:28, 2:1-3).

4       **1.  Eleventh Amendment Immunity**

5       The Eleventh Amendment provides:

6           The Judicial power of the United States shall not
7       be construed to extend to any suit in law or equity,
        commenced or prosecuted against one of the United
        States by Citizens of another State, or by Citizens or
8       Subjects of any Foreign State.

9       It is a well-settled principle that "nonconsenting States

10 may not be sued by private individuals in federal court."  Board

11 of Trustees of the University of Alabama v. Garrett, 531 U.S.

12 356, 363 (2001).  However, "Congress may abrogate the States'

13 Eleventh Amendment immunity when it both unequivocally intends"

14 and is constitutionally authorized to do so.  Id.

15      Here, Congress explicitly declared that a state *cannot*

16 invoke Eleventh Amendment immunity from suit in federal court for

17 a violation of the IDEA.  20 U.S.C. § 1403(a).  Further, in

18 enacting the IDEA, Congress permitted parties to seek remedies

19 "at law and in equity" for such a violation so long as those same

20 remedies would be available in a suit against a public entity

21 other than the state for the same violation.  20 U.S.C. §

22 1403(b).  Plaintiff brings suit against defendant CDE under

23 section 1415(a) of the IDEA.  Defendant CDE does not contest that

24 it receives federal funds under section 1411 of the IDEA to

25 provide FAPE to children with disabilities.  As such, defendant

26 CDE is not protected by Eleventh Amendment immunity.

27 /////

28

1        **2.    Failure to State a Claim**

2        However, defendant CDE argues that claim VII must still be

3   dismissed because plaintiff has also failed to state a claim upon

4   which relief can be granted, as Congress "neither provided nor

5   intended for monetary damages to be available under the IDEIA."

6   (Df. CDE's Mot. at 5:22-23).   Defendant CDE contends that

7   plaintiff only seeks one remedy - "general damages" - unavailable

8   under the IDEA.   (<u>Id.</u> at 6:12-14).   Defendant CDE is correct in

9   asserting that monetary damages are ordinarily unavailable under

10  the IDEA.   <u>Witte v. Clark County Sch. Dist.</u>, 197 F.3d 1271, 1275

11  (9th Cir. 1999).   However, plaintiff's FAC seeks more than

12  general damages.   In addition to alleging that she suffered

13  "general damages" subsequent to defendant CDE's alleged non-

14  compliance with the IDEA, plaintiff asks the court to award her

15  compensatory educational services, costs, reasonable attorney

16  fees, a declaration, and any other relief "as the Court shall

17  deem just."   (Pl.'s FAC at ¶ 121).   While plaintiff does not

18  specify which of these demands derives from defendant CDE's

19  alleged failure to enforce the corrective actions it demanded of

20  defendant VUSD in its June 3, 2005 compliance report, under the

21  liberal pleading standard of Federal Rule of Civil Procedure

22  8(a), a plaintiff is only required to assert "a demand for

23  judgment for the relief the pleader seeks."   Fed. R. Civ. P.

24  8(a).   Rule 8(a) does not require a plaintiff to make such a

25  demand with specificity, and, on a motion to dismiss, the court

26  must construe the complaint in the light most favorable to the

27  plaintiff.   Accordingly, the court cannot dismiss plaintiff's

28

28

seventh claim for relief on the ground that plaintiff only seeks monetary damages unavailable under the IDEA.

Furthermore, the Ninth Circuit has found that available relief under the IDEA is "relief suitable to remedy the wrong done the plaintiff . . . ." <u>Robb</u>, 308 F.3d 1047, 1049. Setting aside the other forms of relief plaintiff seeks to recover, the court finds that, at a minimum, plaintiff's request for compensatory educational services is relief available under the IDEA, for a violation of section 1415(a). As such, plaintiff sufficiently states a claim upon which relief can be granted.

**CONCLUSION**

For the foregoing reasons, defendant Donahue's motion to dismiss plaintiff's claim for relief VI against her in her official capacity is GRANTED. In all other respects, defendants VUSD and Donahue's motion to dismiss plaintiff's FAC, as to claims for relief I, II, III, IV, V, and VI, is DENIED. Defendant CDE's motion to dismiss plaintiff's FAC as to claim for relief VII is DENIED.

IT IS SO ORDERED.
DATED: July 27, 2006

                              /s/ Frank C. Damrell Jr.
                              FRANK C. DAMRELL, Jr.
                              UNITED STATES DISTRICT JUDGE